UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHASIDY A., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-02577-TAB-TWP |
| | ) |
| ANDREW M. SAUL Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Chasidy A. appeals the Social Security Administration's denial of her application for disability insurance benefits. [Filing No. 16.] Plaintiff argues that the Administrative Law Judge erroneously discounted opinion evidence from her treating gastroenterologist and instead relied on a medical expert's testimony that inaccurately assessed Plaintiff's medical record, resulting in a residual functional capacity unsupported by substantial evidence and which failed to account for all of Plaintiff's severe impairments—namely, her issues with pancreatitis. While the ALJ found Plaintiff's severe impairments included gastrointestinal disorders, pancreatitis, and chronic abdominal pain, she assessed no limitations relating to Plaintiff's gastrointestinal issues. Given the extensive and at times conflicting medical record in this matter, it is not clear from the ALJ's decision whether the record was properly evaluated or addressed in the resultant RFC. Therefore, Plaintiff's request for remand [Filing No. 16] is granted.

**II.     Background**

The SSA denied Plaintiff's claim for disability and disability insurance benefits initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled. The ALJ considered Plaintiff's claim for benefits according to 20 C.F.R. § 404.1520(a). First, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017. Subsequently, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from November 7, 2012, the alleged onset date, through December 31, 2017. At step two, the ALJ found that plaintiff had the following severe impairments: disorders of the gastrointestinal system, pancreatitis, and chronic abdominal pain. [Filing No. 8-2, at ECF p. 14.]

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with the following nonexertional limitations: "[Plaintiff] must avoid all use of hazardous moving machinery and exposure to unprotected heights. She must have no fast-paced production requirements." [Filing No. 8-2, at ECF p. 16.]

Next, at step four, the ALJ determined that through the date last insured, Plaintiff was able to perform past relevant work as a nurse assistant, dental assistant, radiology technician, and phlebotomist. [Filing No. 8-2, at ECF p. 20.] The ALJ concluded that Plaintiff was not disabled.

**III.    Discussion**

Plaintiff raises two arguments on appeal.  First, Plaintiff contends that the ALJ erroneously evaluated opinion evidence, which resulted in an RFC finding unsupported by substantial evidence.  Second, Plaintiff argues that the ALJ committed reversible error in assessing an RFC that failed to account for all of Plaintiff's severe impairments—in particular, her pancreatitis.  [Filing No. 16, at ECF p. 1.]

This Court reviews an ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings. . . shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  "Substantial evidence is not a demanding requirement. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin v. Saul*, No. 19-1957, 950 F.3d 369, 373 (7th Cir. 2020) (internal citation and quotation marks omitted).  While an ALJ "does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it.  The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) (internal citations omitted). "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A. The ALJ's evaluation of the opinion evidence was improper and failed to draw a logical bridge from the evidence to the ALJ's conclusion.

Plaintiff first argues that "the ALJ's evaluation of the opinion evidence resulted in a residual functional capacity which was unsupported by substantial evidence or the relevant legal standards." [Filing No. 16, at ECF p. 13.] Plaintiff focuses on the ALJ's treatment of two medical opinions: testifying medical expert Dr. Lee Fischer [Filing No. 16, at ECF p. 13-17], and Plaintiff's treating gastroenterologist, Dr. Mark Lybik [Filing No. 16, at ECF p. 17-21].

The ALJ's decision contains very little detail regarding medical expert Dr. Fischer's opinion, asserting only that Dr. Fischer testified that Plaintiff "always had normal lipase which would be elevated if she had pancreatitis." [Filing No. 8-2, at ECF p. 18.] Yet the ALJ gave Dr. Fischer's opinion "substantial" weight because he reviewed substantial evidence of record, was knowledgeable in social security law, gave well-explicated bases for his opinions, and provided logical explanations upon examination. [Filing No. 8-2, at ECF p. 20.] Dr. Lybik's opinion, by contrast, was only given "some" weight. [Filing No. 8-2, at ECF p. 20.] The ALJ reasoned that while Dr. Lybik had treated Plaintiff previously, he had not seen her "for a protracted period of time[.]" [Filing No. 8-2, at ECF p. 20.] The ALJ further stated: "It is noteworthy that Dr. Lybik does not give a diagnosis of pancreatitis, but instead states that [Plaintiff] has abdominal pain and nausea. Dr. Lybik's statements regarding [Plaintiff's] limitations are unsupported by substantial evidence." [Filing No. 8-2, at ECF p. 20.]

In relation to Dr. Fischer, Plaintiff argues that the ALJ erred in granting substantial weight to Dr. Fischer's testimony, without building a logical bridge between the record and her conclusion, when Dr. Fischer made statements "about significant evidence contained within the record which were demonstrably false." [Filing No. 16, at ECF p. 13-14.] Plaintiff also claims that the ALJ provided no explanation for conclusions reached regarding Dr. Fischer's testimony

4

and that the ALJ failed to mention the "multitude of logical difficulties and blatant inaccuracies contained within Dr. Fischer's recounting of the record." [Filing No. 16, at ECF p. 14.]  For instance, Dr. Fischer testified at the hearing before the ALJ that he did not believe Plaintiff had ever been diagnosed with chronic pancreatitis (as opposed to acute) and claimed that Plaintiff's lipase levels were normal almost all of the time. [Filing No. 8-2, at ECF p. 40-41.] Plaintiff contends that Dr. Fischer failed to consider "statements by Plaintiff's treating providers that explain a diagnosis of pancreatitis." [Filing No. 16, at ECF p. 15.]

      A portion of Plaintiff's argument falls short.  Plaintiff references Dr. Lybik's finding that Plaintiff suffered from "post ERCP" pancreatitis – which actually supports, rather than contradicts, Dr. Fischer's testimony.  In that portion of his opinion, Dr. Lybik assessed that Plaintiff continued to have problems with pancreatitis and "has an acute recurrent pancreatitis[,]" but also noted that an earlier endoscopic procedure showed Plaintiff had a "rather normal pancreatic duct." [Filing No. 8-21, at ECF p. 9.]  Dr. Lybik also articulated that it was "hard to know why [Plaintiff] continues to have elevation of her lipase and continued abdominal pain." [Filing No. 8-21, at ECF p. 9.]  These particular findings and statements from Dr. Lybik do not contradict Dr. Fischer's statement that Plaintiff was not actually ever found to suffer from *chronic* pancreatitis.

      However, Plaintiff cites to many other portions of the record where other treating providers did diagnose her with chronic pancreatitis, or at least referenced such a diagnosis: Filing No. 8-12, at ECF p. 109, 118; Filing No. 8-16, at ECF p. 42, 54; Filing No. 8-18, at ECF p. 54, 97; Filing No. 8-20, at ECF p. 46; Filing No. 8-25, at ECF p. 11; Filing No. 8-26, at ECF p. 8; Filing No. 8-31, at ECF p. 99; and Filing No. 8-33, at ECF p. 14. [Filing No. 16, at ECF p. 16-17.]  In addition, Plaintiff challenges Dr. Fischer's conclusion that Plaintiff never or rarely

5

exhibited the types of clinical findings that he says would support a diagnosis for pancreatitis. Plaintiff cites to findings of Dr. Lybik and other providers in the record where Plaintiff exhibited abdominal tenderness, elevated lipase or amylase levels[1], imaging suggesting pancreatitis, and elevated pancreatic pressure. [Filing No. 16, at ECF p. 16.] Furthermore, the ALJ's decision indicates that Dr. Fischer testified that Plaintiff "always" had normal lipase [Filing No. 8-2, at ECF p. 18], which is not an accurate recitation of Dr. Fischer's testimony or the actual record evidence. Thus, the ALJ's decision lacks a logical bridge between the evidence and her conclusions, and portions of the decision do not seem to accurately reflect the evidence and testimony in the record.

As for Dr. Lybik, Plaintiff claims the ALJ erred when she "illogically dismissed the disabling opinion assessed by Plaintiff's treating gastroenterologist in implicitly concluding Plaintiff would never experience unscheduled absences or time off task related to her pancreatitis." [Filing No. 16, at ECF p. 17-18.] Plaintiff asserts that the ALJ erred in making the statement that " '[i]t is noteworthy that Dr. Lybik did not give Plaintiff a diagnosis of pancreatitis, but instead states that [Plaintiff] has abdominal pain and nausea.' " [Filing No. 16, at ECF p. 19 (quoting Filing No. 8-2, at ECF p. 20).] Plaintiff claims that "Dr. Lybik had, in fact, previously diagnosed Plaintiff with pancreatitis." [Filing No. 16, at ECF p. 19.] In the portion of the record that Plaintiff cites, Dr. Lybik stated:

> [Plaintiff] is a very pleasant 37-year-old female who was recently admitted for pancreatitis. She had an ERCP. She suffered from post ERCP pancreatitis. She came back to the emergency room on the 20th and she was found to have an elevated lipase which was barely 2 times normal, but with her abdominal pain, her elevated lipase, she did meet 2 of the 3 criteria for pancreatitis. She was admitted

---

[1] Lipase and amylase are digestive enzymes that help the body break down and digest fats and starches, respectively. *See, e.g.,* Lipase, Dictionary.com, https://www.dictionary.com/browse/lipase (last visited July 9, 2020); Amylase, Dictionary.com, http://www.dictionary.com/browse/amylase (last visited July 9, 2020).

> for hydration and pain control because she was having continued abdominal pain. I was asked to see and evaluate her because we have been involved in her care.

[Filing No. 8-32, at ECF p. 87.] Dr. Lybik's assessment of Plaintiff noted that she "continues to have problems with pancreatitis and she has an acute recurrent pancreatitis." [Filing No. 8-32, at ECF p. 88.] He noted that "it is hard to know why she continues to have elevation of her lipase and continued abdominal pain." [Filing No. 8-32, at ECF p. 88.]

It is not the role of the Court to re-weigh the medical evidence, resolve conflicts, or draw conclusions on the Commissioner's behalf. *See Burmester*, 920 F.3d at 510. However, it is the role of the Court to ensure that the ALJ's findings are supported by substantial evidence and that contradictory evidence is not outright ignored or dismissed with no explanation. *See, e.g., Moore*, 743 F.3d at 1123 ("The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected."); *Suetkamp v. Saul*, 406 F. Supp. 3d 715, 721 (N.D. Ind. 2019) ("[T]he ALJ's decision does not contain the requisite logical bridge from the evidence to the RFC conclusion where the ALJ selectively cited evidence that supported his conclusion while ignoring evidence supporting Ms. Suetkamp's claim.").

Here, the Court recognizes the complicated, conflicting medical record and the apparent difficulty in reaching a diagnosis of chronic pancreatitis. The ALJ also seemed to recognize that there was a conflict in the medical record regarding Plaintiff's pancreatitis diagnosis. [Filing No. 8-2, at ECF p. 18.]. Still, the ALJ ultimately concluded that Plaintiff suffered from severe impairments of "[d]isorders of the gastrointestinal system, pancreatitis and chronic abdominal pain." [Filing No. 8-2, at ECF p. 14.] And the ALJ noted that "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." [Filing No. 8-2, at ECF p. 14.] Yet the ALJ's decision, which concludes that Plaintiff indeed suffers from these gastrointestinal medically determinable

7

impairments, instead spends much time debating the accuracy of Plaintiff's pancreatitis diagnosis and then ultimately does not seem to take that or her other gastrointestinal impairments into account.

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform a full range of work, limited only with the use of hazardous moving machinery and exposure to unprotected heights. [Filing No. 8-2, at ECF p. 16.] The ALJ makes no attempt to explain how these limits account for the severe impairments the ALJ found Plaintiff to have and which the ALJ stated "significantly limit [Plaintiff's] ability to perform basic work activities[.]" [Filing No. 8-2, at ECF p. 16.] And while the ALJ claims to have given "substantial" weight to Dr. Fischer's testimony, the ALJ provides no further specific details on his testimony or why it was relied on, other than to generally claim that he gave a logical and well-explained opinion. [Filing No. 8-2, at ECF p. 20.] The ALJ also provides no link between the record evidence and why she found Dr. Lybik's opinion regarding Plaintiff's limitations to be "unsupported by substantial evidence." [Filing No. 8-2, at ECF p. 20.] Thus, the Court remands this matter so that the ALJ may re-evaluate the record and clarify her analysis on Plaintiff's pancreatitis and gastrointestinal issues and the potential impact Plaintiff's impairments may have on her ability to work—or logically explain why they do not.

      **B.    The ALJ's assessed Residual Functional Capacity fails to account for Plaintiff's limitations due to pancreatitis.**

Plaintiff next contends that the ALJ erred in assessing a residual functional capacity that "did not reflect any need for absences or for time off task to address Plaintiff's need for restroom breaks, symptom management and medical treatment, or her general ability to remain focused" due to pancreatitis. [Filing No. 16, at ECF p. 21.] This issue has essentially already been addressed. As noted above, the ALJ found Plaintiff suffered from a severe medically

determinable impairment of pancreatitis, in addition to disorders of the gastrointestinal system and chronic abdominal pain, and she acknowledged that these impairments significantly limited Plaintiff's ability to perform basic work activities.  [Filing No. 8-2, at ECF p. 14.]  Dr. Lybik stated that he would expect Plaintiff's medical conditions to cause her to be absent from work at least one to two days per week and to take unscheduled breaks at least every two hours during an eight-hour day.  [Filing No. 8-34, at ECF p. 33.]  However, the ALJ assessed no time off task or absences, breaks, or other suggested limits.  And the ALJ did not provide any explanation as to why she concluded that "Dr. Lybik's statements regarding [Plaintiff's] limitations are unsupported by substantial evidence."  [Filing No. 8-2, at ECF p. 20.]

While the Seventh Circuit does not require an ALJ to evaluate every testimony or piece of evidence, the ALJ still must build a "logical bridge" from the evidence to his conclusion.  *See, e.g., Pepper v .Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) ("In rendering a decision, an ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence."  (Internal citation and quotation marks omitted)).  Here, the ALJ did not build any logical bridge from the evidence to her resultant RFC and conclusion regarding Plaintiff's ability to work.  And the ALJ completely failed to address Dr. Lybik's assessment regarding limitations he believed Plaintiff would need due to her gastrointestinal issues.  Thus, the Court cannot adequately evaluate the ALJ's conclusions, and remand is necessary so that the ALJ may either assess unscheduled absences and time off task or provide a logical and accurate explanation as to why the record does not support such limitations.

### IV. Conclusion

For the reasons stated above, the Court grants Plaintiff's request for remand. [Filing No. 16.] The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings and consideration consistent with this opinion.

Date: 7/14/2020

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email